**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**FREDERICK COWAN & COMPANY, INC., Respondent.**

**No. 74C 791.**

United States District Court, E. D. New York.

July 17, 1974.

---

Harold L. Richman, Regional Atty., N. L. R. B. Region 29, Brooklyn, N. Y., for plaintiff.

Bruno Baratta, Mineola, N. Y., for defendant.

*Opinion*

PLATT, District Judge.

This proceeding had its origins on February 6, 1973 when Local Lodge #5, International Brotherhood of Boiler Makers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO (hereinafter called the "Union") filed a petition with the Applicant (hereinafter sometimes the "Board") herein (Case No. 29–RC–2175) requesting an election among employees of Respondent,

As a result of the filing of such petition, the Respondent, the Union and a Board Agent, met on February 21, 1973 for the purpose of negotiating a stipulation for certification upon consent election. Those present for the Respondent included Mr. and Mrs. Cowan and their attorney, Bruno Baratta; Mr. William Koenig for the Union and Mr. Ronald Travis for the Board, its Agent.

A number of matters were in dispute, negotiations ensued and a settlement on various issues was made. Among the issues in dispute was the Board's stated requirement that the Cowans would have to supply the names and addresses of employees in the unit in accordance with the requirements of the Board in its Excelsior Underwear, Inc. 156 NLRB 1236 case.

According to the decision of the Administrative Law Judge of the Board, the stalemate on this issue was broken when the Cowans volunteered that their objection did not apply to the addresses of employees who were willing to have their addresses handed over and the Cowans proposed that they ask the employees for their consent. Both the Union and the Board agreed to this proposal and a settlement of all the issues was achieved.

In the past, courts have consistently upheld settlements and stipulations freely arrived at between the parties in labor disputes as contracts between such parties and, unless otherwise contrary to law, binding upon the parties thereto according to its terms. NLRB v. United Dairies, Inc., 337 F.2d 283, 286 (10th

Cir. 1964), stipulation and agreement to waive representation hearing and composition of appropriate bargaining unit; NLRB v. Carlton Wood Products, 201 F.2d 863, 36 A.L.R.2d 1070 (9th Cir. 1953), agreement to waive representation hearing; NLRB v. Standard Transformer Co., 202 F.2d 846 (6th Cir. 1953), agreement to waive representation hearing.

Thus, on February 21, 1973, the Union and Respondent executed a stipulation for certification upon consent election which was approved on February 23 by the Regional Director for the Board's Region 29.

On February 22, 1973, each employee was handed a form by Mrs. Cowan containing the following language and request for permission:

> "In keeping with our Company policy not to divulge employees personal information to anyone, we ask you to sign this document allowing us permission to give your home address to the National Labor Relations Board, which they will pass on to the Boiler Makers Union #5.

> Mildred C. Cowan,
> Secretary
> Frederic C. Cowan,
> President

> Permission granted: _____ Dated
> Permission not
> granted: _____ Dated
> Witnessed by: _____ Dated"

The office clerical employee present at the time witnessed each signature as the employee signed. The Administrative Law Judge specifically found that "There is no credible evidence that the Cowans made any comment other than that indicated. Of the 28 employees in the agreed upon unit, only 11 signed their names after the words 'Permission granted'".

Copies of the 11 forms containing the addresses of each employee granting permission were submitted to the Regional Office and Respondent submitted a complete written list of the 28 names of all its employees.

The election was held on March 14, 1973 and 25 ballots were cast of which 11 were for the union, 12 against and 2 were challenged.

The Regional Director investigated the challenged ballots and in his report he recommended to the Board that the challenges to the 2 ballots be sustained.

As this Court reads the record, the election held pursuant to the agreement made between the Board's duly authorized agent, and the duly authorized representative of the Union and the duly authorized representatives of the Company resulted in 12 votes against the Union and 11 votes for.

In recommending that the election be set aside on various grounds, the Administrative Law Judge said that "in addition, because there appears to have been no meeting of the minds at the time the stipulation for certification upon consent election was executed on February 21, I recommend that the stipulation be set aside and that the Union's representation petition in Case No. 29–RC–2175 be processed as if no stipulation had yet been entered into."

■ The Court finds absolutely no justification whatsoever for this recommendation.

■ In the course of his opinion, the Administrative Law Judge made such extraordinary statements as "the form of the ballot could reasonably be construed by the employee as requiring him to indicate some preference for or against the Union."

Any reasonable reading of the form can only lead one to conclude just the opposite. It appears without any doubt to this Court that the management (in a fashion designed to be in favor of the Union) asked each employee for permission to give his home address to the National Labor Relations Board. This would clearly seem to suggest to the employee that the management wished an affirmative rather than a negative an-

swer thereto (i. e., one in favor of the Union rather than against it).

The Administrative Law Judge went on to say that such polling under such circumstances "was a coercive interrogation and an unfair labor practice." Under the circumstances, the Court finds such conclusion to be arbitrary and unreasonable.

Accordingly, and in other words, the Court finds no reasonable or substantial basis upon which to set aside the stipulation made between management's, the Board's and the Union's representatives.

The Board's argument and case cited herein (Formfit Rogers Co. v. NLRB, 71 LRRM 16,636 (D.C.M.D., Tenn., 1969)) that its *Excelsior* rule requirements cannot be "waived" misses the point. The question is not one of request, denial and election without the list, i. e., waiver, but rather one of a settlement and compromise of issues arrived at freely between the parties and an attempt by two of the parties to the settlement to repudiate the same when the results thereof did not turn out to their satisfaction.

Based upon the decision of the Administrative Law Judge issued on October 31, 1973, which also found other unfair labor practices, the aforedescribed election was set aside by order of the Board dated January 18, 1974 and the proceeding was remanded by the Board to the Board's Regional Director for Region 29.

On April 10, 1974 the Board's Regional Director for Region 29 issued a decision and direction of election in the proceeding pursuant to Section 9(c)(1) of the Act (29 U.S.C. § 159(c)(1)) in which he directed an election to be held in the unit of approximately 25 production, maintenance, shipping and receiving employees and drivers at Respondent's two plants in Plainview, New York.

In such decision and direction, however, the Regional Director further directed Respondent to furnish an election eligibility list containing the names and addresses of all of the employees eligible to vote to the Regional Director on or before April 17, 1974, in direct contravention of the stipulation made between the parties and executed on February 21, 1973.

When the Respondent refused to comply with such decision and direction, the Regional Director caused a subpoena duces tecum to be issued on May 6, 1974 pursuant to Section 11(1) of the Act (29 U.S.C. § 161(1)) directing Respondent to produce and make available to the Board's Regional Office Respondent's books and records, or an eligibility list in lieu thereof setting forth the names and addresses of all employees eligible to vote in the election.

Following Respondent's failure to comply with such subpoena the Board applied to this Court pursuant to Section 11(2) of the National Labor Relations Act for an order requiring Respondent to comply therewith.

In addition to what has been said above, the Court need only remind the litigants that the "law actively encourages compromise and settlement of disputes". Stanspec Corp. v. Jelco, Inc., 464 F.2d 1184 (10th Cir. 1972); Florida Trailer & Equipment Corp. v. Deal, 284 F.2d 567 (5th Cir. 1960); W. J. Perryman & Co. v. Penn Mut. Fire Ins. Co., 324 F.2d 791 (5th Cir. 1963); Moses-Ecco Co. v. Roscoe-Ajax Corp., 115 U.S. App.D.C. 366, 320 F.2d 685 (1963).

■ This case is no exception. This Court is not favorably disposed to the Board's application to have this Court ratify and condone their attempt to breach a settlement and stipulation freely arrived at between the parties herein on the premises indicated in the opinion of the Board's own Administrative Law Judge.

Accordingly, the Board's motion is granted only to the extent that Respondent is directed to produce the names of all (and addresses of consenting) employees eligible to vote in the new election directed by the Board but otherwise is denied in all respects.

So ordered.

The foregoing makes it unnecessary for this Court to determine the perhaps more significant question posed by the Board's application (which it claims to be established law in its favor), namely, whether an employee's right to privacy clearly asserted by the employees herein may be invaded by an arm of the government arguing in effect that it is entitled to do so because it knows best what is good for an employee. Such question, which causes this Court grave concern in this age of the protection of the rights of the individual, need not now be resolved.

The Clerk of the Court is directed to mail copies of this opinion to counsel for the parties herein.